23-1309. Council, when you're ready. Good morning, Your Honours. May it please the Court. My name is Shomit Ghosh. On behalf of the Plaintiff Appellants, Percival and Repla, I'm joined by my colleague and friend Roman Lips as well at the table. This is a relatively limited issue that's presented to the Court here, and that's partially because I think the District Court's error is clear, and it's partially because of the intervening Supreme Court decision that was issued after the District Court's decision and after all these papers were briefed. To summarize quickly, District Court, in our view, improperly analyzed the domestic injury requirement first promulgated in RJR Nabisco when it applied a residency test to the allegations that my clients have made regarding illicit asset transfers that occurred with the defendant entity. That decision was wrong at the time it was reached because it ignored the great weight of authority that already existed that an injury is the basis for the determination of domesticity, not where the plaintiff resides or where the plaintiff's nationality is. The District Court ignored that, and it said clearly in its decision, the question is who was injured and where were they injured? That language is the nom-de-guerre of the residency requirement, and you can look at that directly in Baskinon. The District Court... But why is it where they were injured the correct question, right? And maybe where they're injured is where they reside, and maybe that depends on the nature of the property right. But that seems to be the question the Supreme Court has told us to ask, or at least half of the question, right, is where is the injury, right? And it seems like that's what the... It doesn't really matter. We're applying the Supreme Court, not micromanaging the District Court before the Supreme Court's decision, but isn't where they were injured the central inquiry now? Yeah, so I think it's unfortunate the language that the courts have used is a little bit that the way that second question has been interpreted by courts that have endorsed that two-step inquiry has been to look at the residency of the party that is bringing the RICO claim. So I agree with you, it can be... It could be the residence, but it need not be, right? That's the like... I mean, this is the example, I'm not sure where it comes from, but like if you reside in Ghana, but somebody burns your house down in South Carolina, nobody thinks that you were injured in Ghana because your residence is Ghana, because your house is a physical piece of property that was in South Carolina and it was burned down. Absolutely, Your Honor, I completely agree with you. And I think the second question can be interpreted and phased so it fits with what the Supreme Court's asking. The point I was trying to make is that question though, that two-step inquiry emerges from courts who did only look at the residency. So in your hypothetical, those courts, it's the Seventh Circuit in Amera, it's Al-Mahdi in the SDNY, or it can be the lower court, Baskin in ruling, which is overruled by the Second Circuit. They all said that's the inquiry. Their second answer was you were in Ghana when your house was burned down. So you suffered the injury in Ghana and thus you're precluded from recovery. Completely agree with you. That second question should be interpreted more broadly. Okay. But here, the house was in Ghana too, because that's where the property was invested. It's not just that the plaintiff lived in Ghana, it's that the plaintiff put the money, it was holding the money in Ghana too. So how do we get to the house in South Carolina? Sure. So to understand why this is domestic here, it's because the predicate act which caused the injury necessarily requires domestication here. So this is what makes me nervous about the emphasis on the predicate act and the defendant's conduct. I worry that we're running into RJR Nabisco if we put too much emphasis on that, because you can tell me what I'm missing. It seemed like RJR Nabisco is saying that RICO is extraterritorial when it comes to the defendant's conduct. The substantive RICO provisions, we can reach the defendant's conduct extraterritorially, but not the private right of action. That's only domestic. And so we have to look at the place of the injury. And then if we start to define the place of the injury through the defendant's conduct, I worry that we are collapsing that distinction that is at the heart of RJR Nabisco. Did I say that clearly? I think you said it clearly. Where I would, I guess, differ in my interpretation of RJR is RJR Nabisco is not a model for clarity as in the guidance it gives the lower courts on how to apply it. And the concern in RJR was that you would have private plaintiffs taking entirely extraterritorial actions, bringing them into American courts with very attenuated links towards the United States and comedy and principles of balancing international relations would be better kept there. Well, why isn't that this case? I mean, this plaintiff put the money into a Ghanaian investment firm and had no reason to think this money was ever going to end up in the United States. No reasonable expectation that United States law would ever apply. So why isn't bypass whatever the limits on recovery are in Ghana and come and get triple recovery under RICO? Isn't that the problem that the court was worried about in RJR Nabisco? I think in RJR Nabisco, there is some concern of, to your point, reasonable expectations and comedy. But I think the point that Smagen, the new case, makes clear is, and this is a direct quote from it, you have to look at the injurious effects of the racketeering activity. You can't tether the inquiry from the racketeering activities. And of course, in RICO. But the new case does, I mean, you got to read the new case in light of RJR, right? So the new case tells us that where the racketeering activity and the injury are both in the United States, we're good, right? And that's the new case, or at least substantial racketeering activity and injury. But the question we've got is where the racketeering activities are domestic, let's hypothesize for a minute, but the injury is extraterritorial. And the new Supreme Court case, I'm not going to try to pronounce it, doesn't tell us what to do in that case, where those two factors, it only identifies these two, those two factors cut in opposite directions. And I take in part Judge Harris's point to be that where they cut in opposite directions, RJR tells us we can't just look at the racketeering activity, right? Because that would run afoul of RJR. And maybe suggesting the most recent cases focus on racketeering activity was just, you know, unnecessary aside, we're really about the injury. Understood. I would say that I think the new case, we pronounce it Smagan in our office, we're not entirely sure. Thank you. I'll take Smagan. But what it says is you're supposed to look at the injury and then the exact next language is the racketeering activity that directly caused it. So the injury comes after the racketeering activity. It's not before it. And I think that's a critical distinction that the new opinion creates that you're supposed to consider what's the injury of the racketeering activity. Why that's relevant to the other inquiry you had previously is this. I don't think it's correct that the injury is suffered in Ghana in the first sense. If you think about what occurred here, this is not the more traditional asset transfer case where the money is first taken in a foreign country. It's embezzled or stolen. And then through an attenuated chain of circumstances comes to the United States of America. That's what Almaty poses. That's what Baskin imposes. That's not here. These are direct transfers from the Gold Coast entity, which was holding it to IBS. No intermediary, no intervening step. So the actual culmination of the theft doesn't occur up until it comes to the United States of America. But isn't the injury there to Gold Coast, right? You've depleted Gold Coast assets, right? The injury is to the Gold Coast entity, right? That's what happened. It used to have $100 in assets. It just transferred $90 away. So now it only has $10 in assets and it got nothing back. So it's now Gold Coast is worse, right? That's who's injured. As a direct cause, as the Supreme Court in Smegin sells, right? The direct cause is that Gold Coast is worse off. And then you're derivatively injured as a result because you've got a claim against Gold Coast. So why isn't the injury to Gold Coast what Smegin's telling us to look at, right? The injury is to Gold Coast and Gold Coast is in Ghana. Well, because what Smegin says is let's hold that hypothetical. The injury is to Gold Coast. The injury came about by racketeering activity that occurred in America. And the injuries was aimed towards America. It used American instrumentalities. No, no. We just said the injury was in Ghana because Gold Coast is who's injured. But the injury that Gold Coast suffered came through racketeering activity that had an American origin. No doubt about that, right? And no doubt the racketeering activity occurred in America. I've got you. And if this is a criminal RICO case, it could be prosecuted here, right? But RGR tells us that that's not the inquiry. We instead have to look at least predominantly at what the injury is because it's a private cause of action. So to put it differently, I don't think we can separate the injury from the racketeering activity. I think the chronology has to start with the racketeering activity. Doesn't RGR tell us exactly that we have to separate those two? I thought that was the point of RGR. RGR, I don't think it says you analyze injury first and then racketeering activity. I don't think RGR speaks directly to that. No, but it says they're different, right? Of course. I agree they're different, but I think one... So here's the way out. Here's how we're formulating it. The racketeering activity is what precipitates the injury. So when you money launder or when you illegally transport goods, you're causing the injury. And in that instance, your hypothetical, the injury is Gold Coast, losing the funds. But that came about by racketeering activity. Now, what Smagen clarifies, and this was ambiguous, I think, from RGR, and that's recognized even in the district court's opinion, who says the Fourth Circuit hasn't provided guidance yet. What Smagen clarifies is you can't detether them. So if the racketeering activity, this is directly in the opinion where it says you have to look at the racketeering activity that caused the injury and the injuries, pains, and effects of that activity. If that activity has an American nexus, then the injury is also sufficiently domestic for... Is there any example... So give me an example of racketeering activity that occurs in the United States for which the injury is not in the United States. Because it sounds like what you're saying is as long as the racketeering activity happens here and that racketeering is what causes the injury, the injury happens here. That's always true in your view. I think it's true for the purposes of this very unique... Give me an example where it wouldn't be true, because I think your argument is that's always true, and I think Smagen and RGR tell us that's wrong. Where it would not be true? Yeah. Where would it be that the racketeering activities occur domestically, got domestic money laundering and receipt of stolen funds, right? But there, in your view, would be an international injury. Well, I think, Tim, I guess you're right. So in my view, if there is the orchestration of the racketeering activities occurs in the United States of America, under Smagen, I think that constitutes a domestic injury. No matter what. It doesn't matter what the type of property is, where it is, anything else, right? It's just that's sufficient. As long as the racketeering also, and this comes from Smagen, was aimed to and had a purpose that interrelated with the United States of America. So it is a holistic examination. It is a broad examination. And that's what the court was presenting. I'm sorry. And then can you tell me why this was aimed to the United States, right? Because the racketeering activity here, you might say, was aimed at depriving Gold Coast investors in Ghana of money. Yes. These are American defendants who reside in America. They set up a secret holding company in down in Alexandria. And from there, they created this company created invoices to bring in. I got why they're why the racketeering activity occurred here. What I'm saying is why is it aimed at America instead of aimed at Gold Coast in Ghana? Well, its aims are towards appropriate the funds to within the country. So it is a scheme to basically bring full funds into the country and to alienate them from their original place. And we would argue, obviously, it's because that's advantageous towards the concealment of the funds and the making them harder to recover. There's a lot of attenuated long term benefits of that. But I think this is an American scheme in the sense it's perpetuated by Americans through American instrumentalities. And I think the important point is without the transfer to America, there is no crime. If the money's in Gold Coast, that's not theft because Gold Coast is the rightful depositor. It only occurs when that goes to IBS, which is in Virginia. So that is what I think Smagen says. Look at the activity. And then if it's officially domestic and the injury was a natural byproduct of the domestic activity that creates a domestic. You're saying this whole case is different if it's like a two step process. First, they take the money out of Gold Coast and put it somewhere else in Ghana. And then the second step is they put it, you know, it just like I don't know how electronic funds transfers work, but it it sits for a second. It's electronically transferred for one second to another account in Ghana and then to the United States. Now we don't have a domestic injury anymore. I think I think that would be probably true because of the fact that there's approximate causation issue in that circumstance or the initial theft that you're discussing where it goes to an intermediary that occurs in another jurisdiction. That's not here because the transfer to the U.S. doesn't seem absurd, though, to you. I don't think so. I think when when potential alleged RICO members purposely use the United States and it's either way, they're using the United States. It's just that they did the funds transfer wrong. And so it went again. I don't know what I'm talking about, but imagine electronically it's for a second in some other account and then goes to the United States. The point is to hide it in the United States. But now it's a two step theft from Gold Coast. And you're saying if step one moves the funds into a different but overseas account for 30 seconds and then it gets transferred to the United States, that's a different case. I think it's a different case than what's presented here. And I think in that case, it might come out differently. I think it'd be much closer. But I do think if the aims are clearly towards a long term appropriation, that's it. That fits within Smagen, which says you have to look at the jurors. Just one point on that. Smagen is a Moscow resident. An underlying dispute is in London, is not in the United States either. They because of the judgment that he received. But the long term view is it came from abroad. He felt the injury in Russia, where he resides. And so in that step, I think this is the clear. I think you've got to judge. Anyway, we've taken you well long enough. All right. Thank you very much. And you do have some rebuttal time. Good morning, everyone listening to the court. My name is Robert Handelman, and I represent the defendants in this matter. Your Honor, this case fails because at its core, it's about the loss of an investment in Ghana. The plaintiffs do not allege any injury to business or property, which is what's required by 18 U.S.C. 60 or 1964 C, tangible or intangible in the United States. As such, this is a case where the presumption against extraterritoriality squarely applies. The is a paradigm of the danger the Supreme Court noted in R.J.R., which Judge Harris referenced, of foreign plaintiffs avoiding their home jurisdictions to resolve disputes, to hope to take advantage of our much more generous remedial schemes in the United States, particularly under Rico. And in fact, plaintiff Rapo is trying to make a business of that, buying a claim from a Ghanaian to try to domesticate it here and travel it in U.S. courts. It is important to be clear, because I agree this is an easy case. The amended complaint does not allege any injury to business or property. So help me understand. So pre-Smagan, I totally understand your argument. But Smagan tells us that we are looking not only at the injury, but where the racketeering activity occurred and where it was aimed or, you know, like it looks at both of those things. And it says where both the injury and the racketeering activities that caused the injury occur domestically, it's domestic. Right. But here we've got like the case that doesn't fit that right, because we've got the and at least most substantially, we've got the injury occurring in Ghana. Right. This is the example that's like the two sides of of Smagan. And what do we do then? So I think Smagan actually provides very little guidance here, because what Smagan was addressing was a split in the circuits when intangible property rights were involved. They rejected that it was just about intangible. Right. So it said that was the argument. I probably intangible, too, but it makes no difference. It did not limit it to being intangible or tangible. It just said where the racketeering activities and the injury, the California judgment are all here. Sure. And I only raise it, Your Honor, because what Smagan did was they rejected the residency test. But the residency test never applied to tangible property. It was only applied to intangible. They said we're going to just treat everything the same, which I agree with. Smagan, what Smagan did was... So why? This probably doesn't matter, but I'll ask anyway. Why is it that you think this is a tangible property? You gave cash to a company as an investment. You now have a chosen action in Ghana. Why is that tangible property? You don't have a right to those same dollar bills. You didn't put them in bailment with them. That's true. But in the Second Circuit decision in Visconian specifically says that historically in the jurisprudence of the United States, in this context, money has been treated as tangible. On page 10 of their brief... I understand that, but neither of you make sense in that regard. It seems to me, right? You've got a right to recovery, right? And the Supreme Court said it goes in action, right? That's what you've got. A chosen action is not a tangible piece of property. In a way, it doesn't matter because if there is an intangible right, because I can definitely see an argument that the intangible interest is their contract or the assignors contract with Gold Coast. That's the intangible interest, right? Let's look at it that way. It's still in Ghana. And so, in Smagan, Smagan says, we agree with the approach of the Second Circuit in Visconian and the Third Circuit in Humphrey versus GlaxoSmithKline. So, Visconian was a mixed case. Well, no, they treated it all as tangible in Visconian. Humphrey was an intangible interest case. And Humphrey applied a bunch of different factors to conclude no domestic injury. The factors they considered were, one was residency, but they said we're not going to treat it as dispositive. One was where were services to be rendered. One is where were services expected to be received. One was what is the controlling law of the intangible interest, the contract. And they concluded in Humphrey that all of those things were China. Here, all of those factors are Ghana. So, whether it's tangible or intangible, taking that test, which Smagan says that's the right way to do it. But under Smagan, the facts of Smagan, all of those factors would have pointed toward extraterritorial, right? It's a London arbitration. It's a Russian. All of the underlying relationship was international. I have to disagree with that because in Smagan, it wasn't about the London judgment. It was about the California judgment. Right, but the California judgment was about the London arbitration award, which was about the international conduct. So, if we're trying to get back to the underlying relationship, it seems like we can't do that after Smagan. Here's what Smagan says, quote, the rights to California judgment provides Smagan exists only in California and the Smagan quote, because they weren't trying to enforce the London judgment. They were trying to voice California judgment. And all of the activity in Smagan was directed to that California judgment. So, Smagan didn't work some revolution in the law. Smagan was an incremental case, was a conservative case. It just said, don't apply the residency rule when it comes to intangible property. Look at all the factors. And if the court wanted, they only looked at two, right? It looked at. I agree with him. I'm not trying to take the dissent. I'm just saying like he this critique may be right or wrong, but descriptively, it seems accurate, right? It looked at where the racketeering activity occurred and where the California judgment was. In that case, they said everything's everything's California. And so that's the end of the analysis. And it probably depends on the case. If you look at what's happened since Smagan, there's been a Ninth Circuit decision post-Smagan. I think it was in August or September of this year. The name of the case is Global Master International versus Esmond Natural. It's 76 F 4th 1266. There, a Chinese plaintiff tried to assert a RICO claim based on receiving underdosed nutritional supplements. And they said there was a RICO scheme where they were trying to undermine, you know, try to rip them off basically selling them supplements that didn't have what they claimed to have in them. And what the Ninth Circuit did applying Smagan was to say the key factor, we're going to look at all the factors, but the key factor is going to be where the ownership of those supplements changed hands. So because the purchase was FOB Los Angeles in that case, they said, okay, that's a domestic injury because you took possession in the United States of the underdose supplements. And they viewed that as being the key factor, not the fact that it was intended or aimed at these intangible interests in China, which was the allegation. And one of the significant points in this Global Master case is they note that Smagan left undisturbed Baskinian statement that the most important thing when money is involved is where is the money when it was lost. And I think Baskinian is a very instructive case because there are four schemes with four different kinds of injury. Two of the schemes involved, Baskinian comes out of Chile and there was an estate there and the plaintiff saying that the defendants had taken assets from this estate. In two of the schemes, the allegation was money came out of the accounts in Chile to the defendants accounts and then was brought to the United States, money laundering. The Baskinian court, this court of appeals held there is no domestic injury there because the injury happened when they took the money from the account in Chile that belonged to the plaintiffs and put it into the defendant's account. Coming here didn't change that. The other two schemes- Why is it, why didn't that, why didn't that make his point, right? That if there was a, or Judge Harris's point, I should say, right? That just says if there was a stop in Ghana, a momentary transfer from Gold Coast to another entity in Ghana and then to the United States, then that case would tell us like that's not a domestic injury. But here we have a direct transfer from Gold Coast to the United States. The problem is Gold Coast is not the plaintiff and Gold Coast isn't alleged to be a victim. That Gold Coast is alleged to be an instrumentality of the enterprise. They are the victims. So they made a transfer of their money pursuant to a contract to an account in an investment company in Ghana, Gold Coast. They weren't repaid. They haven't, putting aside the fact that they haven't really alleged this connection between their particular investments and any transfers to the United States, let's assume that exists. They put their money in Gold Coast in Ghana. Gold Coast isn't a victim and it's not a plaintiff. So then the money is supposedly was moved to the United States to the defendant's accounts. That's not them losing. It's where the injury takes place. And I think this is a super important point. He says, well, after Smiggen that you look at the RICO conduct first and then the injury. Smiggen couldn't have done that because Smiggen can't rewrite the statute. The statute is 18th USC 1964C and it says you only have a private cause of action if your plaintiff's business or the plaintiff's property was injured in the United States. There is no allegation that these plaintiffs or the assignors property or business was in the United States at any point where it could have been injured. It's not like Smiggen where they had domesticated it. They had a California judgment. And you're absolutely right, your honor, to point to RJ Arnabisco because this exact argument was rejected there. At page 350 of the opinion, the Supreme Court says, citing our holding in Sedema, that the compensable injury necessarily is the harm caused by the predicate acts. The court of appeals held that a RICO plaintiff may sue for foreign injury that was caused by violation of the predicate statute that applies extraterritorially. The court goes on to say the reasoning has surface appeal, but it fails to appreciate that the presumption against extraterritoriality must be applied separately to both RICO's substantive provisions and its private right of action. That statement is the U.S. Supreme Court. It wasn't overruled in Smiggen, and I think it's dispositive in this case. There is not a single example in the jurisprudence of a foreign plaintiff is injured in property or business held abroad, but the court says it's still domestic because there was domestic RICO activity. This case would be the first if the court were to rule with the plaintiffs on this. There's no basis for that unprecedented ruling. We cited about a half dozen cases, page 26 of our brief, holding just that, that you don't domesticate a foreign injury to business or property by activity that happens later, and they didn't distinguish in any way any one of them. This case involves a single injury to the plaintiffs. It's not about an injury to Gold Coast. It's an injury to the plaintiffs. They made an investment. They are Ghanian. That's relevant, but I agree it's not dispositive. I also don't think the district court treated it as dispositive. Their property and business was held overseas. They are claiming an injury arising out of a contract that was governed by Ghanian law between Ghanian parties. The only relationship... If they had had, again, hypothetically, if the same story existed and they had up in Virginia and some way or another obtained a judgment in Virginia, even though everything else is the same, would that make a difference? Would that basically be the difference if they had brought a suit in Virginia and gotten a judgment against these defendants? In that scenario, we would not have the issue of avoiding the local law, right? If they had gone to court in Ghana and gotten a judgment. No, no, in Virginia. They went in Virginia. They probably couldn't do this, right? That's why it's a hypothetical, right? But bear with me. So they go to Virginia and they get a judgment against these defendants. In that scenario, would you think that's a domestic RICO case there? Or would it matter because I guess it would have to happen, the judgment would have to come before the money laundering and like. And you'd have Smagan. That's what Smagan happened, right? And Smagan... But if the judgment happens after the money laundering and receipt of stolen funds, that doesn't change it. Only if the rectory activities aimed at evading the judgment. That's the key. Because then you have an intangible right in the United States that's being interfered with. And so, you know, again, I do think, Your Honor, this is an easy test. They actually want to make it a one-factor test where it's just where if there's racketeering activity in the United States, then that's all you need to know. But the words racketeering activities or predicates don't appear in 1964C. The only relevant inquiry is where were the plaintiffs injured in their business and property. That's the question. And Smagan doesn't change that at all. Like I said, it's an incremental decision. And I don't think that this court should go further than the Supreme Court has done. Your Honors, I would just address briefly that there are many reasons as we've laid out in our complaint, why we think this complaint fails. It's not a close case on domestic injury. That's the threshold issue. I'm not going to waste a lot of your time today talking about the other issues, but there are multiple problems. There's no enterprise alleged. The only allegation is that the defendants were basically engaged in their own conduct and not the conduct of some separate entity. I mean, there's actually no conduct alleged by any of the individual defendants at all. They're just kind of grouped together with boilerplate recitations of the elements of RICO. And there's certainly no basis to believe that Virginia state law would apply extraterritorially where the U.S. Supreme Court says the federal law does not. So, Your Honors, for all those reasons, we think the district court absolutely got it right with regard to domestic injury. And frankly, Smagan just makes that clearer. And I would ask the court, commend the court, to read the most recent Ninth Circuit decision, which I think is a helpful application of Smagan. And then with regard to supplemental jurisdiction, the plaintiffs don't really articulate any way in which the court abused his discretion. Judge Alston followed the normal rule. When there's no federal cause of action, he dismissed the remaining state law claims. And their only argument about that is it was an abuse of discretion because it was wrong on the first instance on the federal claim. So, for all those reasons, we'd ask that the court be affirmed. Thank you, Your Honors. I just want to start with one point about Smagan. We disagree in how they are characterizing as an incremental step. I think Smagan clarifies a very important point. We had that discussion in the beginning, which is that the racketeering activity is the beginning and the injury flows from it. And there's one portion of Smagan I just want to read that directly addresses that. This focus makes sense because in the context of RICO, the compensable injury necessarily is the harm caused by the predicate acts that were suffered. The focus is on the injury, not in isolation as the product of the racketeering activity. So that's the court's holding in Smagan, that when you think about an injury to property, the injury comes after the racketeering activity. And so when you ask where was the property injured, the property can't be injured before the racketeering activity is finished and it's culminated. That would create almost a time chronology issue. The racketeering activity creates the injury. And once the injury is complete, where does it occur? Here, the racketeering activity is domestic. It is bringing foreign money stolen into the United States of America. For the injury to occur, that needs to be finished and culminated. And when it is finished and culminated, the property is within the United States of America as well. So the injury is domestic because the racketeering activity requires domestication for it to even occur. Prior to the racketeering activity, there is no injury. And so I think what my opposing counsel has done is they've said, well, the injury exists independent of the racketeering activity. And thus, when there is a Ghanaian injury of the money, but the racketeering activity is domestic, well, those are two separate circumstances. That's the wrong chronology. The racketeering activity brought the money to the United States of America. When it reached the United States, then the injury under the RICO predicates occurred. And that is the domestic aspect. That's what Baskin stands for. And Smagan does change RJR to the extent that it clarifies you cannot just look at where the injury is. You have to look at the racketeering activity, and then that proceeds from there. I think that is not properly dealt with on the other side, because they simply say, well, the racketeering activity brought the money. Isn't that Smagan just rejecting the argument that was presented there that we've got to look at like the ultimate harm in here and the argument in Smagan, which was sort of the loss of wealth, right? And that's the reason, at least the reasons that were given for why we ought to look to Russia, because that's the like end of the chain, right? The buck stops there. And so what the court in Smagan seems to be saying is, no, we don't look at the end of the chain, right? Instead, we look at what's the racketeering activity, but not for what the racketeering activity itself is, but instead for what is the injury that it caused, right? And there, it was the unenforceability of a California judgment. I would look at it, and if you look at the underlying briefing in Smagan in the Ninth Circuit, this was discussed extensively. The inability to enforce the judgment is an injury, but it's probably not the proximate cause of the injury. I think in your questioning earlier, you mentioned the underlying injury is the in Russia, and then that was formalized as the arbitral award. And the judgment is, if you think about the causal chain, Enrico, the proximate cause versus the antecedent events, it's a part of a much bigger story. And so what- No, no, but that's the point, right? This seems like to me what Smagan is telling us is, yes, there's a chain, right? And you go from the California judgment to the London arbitration, to all the activities that took place leading to the arbitration, and ultimately you go to the person in Russia, right? And what the court in Smagan seems to be saying is, London doesn't matter, Russia doesn't matter, right? The racketeering activity affected the judgment, right? That was the most direct connection, direct cause was the judgment, and the judgment is here. So we don't care about London. We don't care about Russia, right? We just care about California. I think what Smagan, I think Smagan says that, but also in the broader sense, what it says is, you can't divorce the injury from the activity though. And the activities were American and domestic. They affected an injury that I think is, I don't think anywhere Smagan says the injury is only California. In fact, the opinion says, basically, and Justice Alito and his dissent picks up on this as well. He says, it admits that there are foreign elements of injury. It says- Of course there are downstream effects, right? If you take, I mean, take this case example, right? The direct injury is to Gold Coast, but there's no doubt that your clients and the owners of your clients are going to have fewer dollars to buy Christmas presents as a result of all of this, right? So that's fine, but we don't look at their ability to buy Christmas presents. What we look at is the most direct injury and that's the Gold Coast in Ghana. And Gold Coast's property was injured when it came to America. That's the fundamental- Say that again? Gold Coast's property was injured when it came to IBS in Virginia. What was the property that was injured when it came to America? It was the funds that were transferred out. How were those funds injured? I mean, did they burn up? They were injured because they were domesticated. No, no, but this is the point, right? So the funds weren't injured at all. In fact, they were like just ones and zeros, right? What was injured was Gold Coast, the entity, because it's now a lot poorer. The property was injured because it was removed from the- No, the entity, not the property wasn't injured. The property just keeps going, right? The ones and zeros are still there, right? What's injured is that Gold Coast is now worth less. That's what the injury is. It's not an injury to the money. The money's just like cruising along. It's fine. It's not owned by the same people anymore, but there's no injury to the property. There'd be injury to the property if they had burned it. If they'd taken a suitcase full of cash and burned it, there'd be injury to the cash. This is an injury to Gold Coast. Correct. But I think the injury, though, is the misappropriation, concealment, the burying of the funds, the removal of them from- That's what causes the injury. Those are the racketeering acts. I get all that, but that's not the injury, right? Well, there's a lenient case law that's found under the Bundy Laundering Predicate Act, for example, that the concealment and the layering of funds, that is an injury from the racketeering activity because you alienate the So I agree with you there. It is the ownership interest. That's right. I agree with that. And that injury that suffered in this context came from American racketeering activity, and it only sprung upon domestication. Because these RICO Predicates require domestication. They require you bringing cash in from outside. So they can't have that before you have it brought domestically. One final thought. The other issue that's not addressed by opponents is this is a fact-intensive inquiry. Smagan makes that very clear. You need to look at the underlying facts. District Court ruled at the earliest stage. We believe that it's too early for a pleading decision on such a fact-intensive inquiry that does resolve a lot on the underlying scheme and exactly where it touched based on- Are there other cases on motion to dismiss, including- I thought Smagan itself was a motion to dismiss case, no? I don't know off the top of my head the posthumous name. I'm pretty sure they're all motion to dismiss cases. What the court does say is it's a case-specific inquiry that all the factors need to be looked at. But it's just like you have to look at all of the allegations. That's not the same as saying you need discovery. Well, I think in this instance, we're talking about where the funds went and who directed them. And the court uses- I mean, just as Sotomayor says, because of the contextual nature of the inquiry, no such factors can capture it. It needs to be a aims or something that I think is fundamentally comes out of discovery to understand what was the intention of the activity. Thank you so much. Thank you very much. We will come down and greet counsel, and then I'll ask the clerk to adjourn us for the day.
judges: Stephanie D. Thacker, Pamela A. Harris, Julius N. Richardson